# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

LOUISE M. EVRIDGE,                    )
                                      )
            **Plaintiff,**    )
v.                                    )          Case No. CIV-07-309-SPS
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner of the Social            )
Security Administration,              )
                                      )
            **Defendant.**    )

## OPINION AND ORDER

The claimant Louise M. Evridge requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national

economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to a listed impairment), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show she does not retain the residual functional capacity (RFC) to perform her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work she can perform existing in significant numbers in the national economy, taking into account the claimant's age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on April 15, 1961, and was 45 years old at the time of the administrative hearing. She has a ninth grade education and no past relevant work. She alleges she has been unable to work since April 1, 2005, because of anxiety disorder, depression, and COPD.

### Procedural History

On April 15, 2005, the claimant protectively filed an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385, which application was denied. ALJ John Volz conducted a hearing and determined that the claimant was not disabled on March 30, 2007. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that the claimant retained the residual functional capacity ("RFC") to perform sedentary work and was to avoid exposure to fumes or odors. He further found that the claimant "[was] incapable of dealing with the public, but she [could] perform simple tasks under routine supervision." (Tr. 17). The ALJ concluded that the claimant was not disabled because there

was work she could perform existing in significant numbers in the regional and national economies, *e. g.*, assembler and machine operator (Tr. 20-21).

**Review**

The claimant contends that the ALJ erred:  (i) by improperly evaluating the medical evidence; (ii) by finding the claimant has the RFC to perform substantial gainful activity; and, (iii) by improperly analyzing her credibility.  The Court finds these contentions persuasive.

The record reveals that consulting psychologist Larry Vaught, Ph.D., conducted a mental examination of the claimant in January 2007.  The claimant complained of a history of anxiety with panic attacks over the past two years.  She previously had experienced several panic attacks per day, but with medication the number had decreased to only three or four per week.  The claimant had suffered sadness since the death of her husband, and she described herself as a chronic worrier.  She tended to become nervous in public and recently had been irritable with some suicidal ideation.  The claimant felt guilty about everything and blamed herself for many of her family problems.  Upon examination, the claimant seemed cooperative but tense.  She was easily flustered on mental status items, requiring two trials to remember four words and having difficulty repeating digits backward.  Results on the Beck Depression Inventory indicated the claimant suffered from moderate to severe anxiety and depression.  In his examination summary, Dr. Vaught described the claimant "as a somewhat tense individual."  He noted "some loss of initiative" in activities of daily living, mild hesitancy by the claimant about entering the public, and a history of two jobs in which

the claimant was overwhelmed by the pressure. Dr. Vaught observed the claimant was "mildly pressured" in the areas of concentration, persistence, and pace, and her abstraction abilities were below average. He assessed the claimant with panic disorder without agoraphobia, depressive disorder (NOS), personality disorder (NOS) with dependent and avoidant traits, COPD, and emphysema (Tr. 252-55).

Dr. Vaught also completed a mental medical source statement regarding the claimant's mental limitations and determined the claimant had moderate restrictions in her ability to understand, remember, and carry-out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public, ask simple questions or request assistance, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. He further assessed the claimant with a marked restriction in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. In his conclusions to the assessment, Dr. Vaught noted the claimant's memory had been affected by her Xanax therapy. He described her "as a tense individual who is quite easily flustered [and] presents [with] significant panic [disorder] and chronic anxiety, probably exacerbated by her perception of pressure and stress." (Tr. 256-59).

The ALJ determined that the claimant's anxiety disorder, depression, and COPD were severe impairments (Tr. 17). In accordance with the requirements of the special technique outlined in 20 C.F.R. § 416.920a, he concluded that the claimant's "depression and anxiety have resulted in moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate deficiencies of concentration, persistence, or pace; and no episodes of deterioration or decompensation of extended duration." (Tr. 19). *See Cruse v. Department of Health & Human Services*, 49 F.3d 614, 617 (10th Cir. 1995) ("When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Secretary must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § [416.920a] and the Listing of Impairments and document the procedure accordingly."), *citing Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1048 (10th Cir. 1993). He summarized the mental evaluation of Dr. Vaught (Tr. 19), and included mental limitations in the RFC determination, *i. e.*, that the claimant could not deal with the public and could perform simple tasks under routine supervision (Tr. 17).

However, the ALJ's assessment of the claimant's mental RFC was problematic for two reasons. First, the ALJ included some of the mental limitations imposed by Dr. Vaught in the RFC, *e. g.*, moderate restrictions in the ability to understand, remember, and carry-out detailed instructions, maintain attention and concentration for extended periods, and interact appropriately with the general public, but he failed to explain the exclusion of others, *e. g.*, moderate limitations in working in coordination with or proximity to others without being distracted by them, asking simple questions or requesting assistance, getting along with co-

workers or peers without distracting them or exhibiting behavioral extremes, responding appropriately to changes in the work setting, and setting realistic goals or making plans independently of others. It was error for the ALJ to "pick and choose" between Dr. Vaught's findings. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper."). Second, the ALJ "held questionable" Dr. Vaught's opinion that the claimant had a marked limitation in her ability to complete a normal work day or work week because he found the claimant's "scanty employment history [did not give] any true indication of the claimant's ability to actually function in a work setting." The ALJ concluded there was "insufficient evidence to make such an assessment as the claimant ha[d] not made a good faith effort to manage her emotional difficulties in a work setting." (Tr. 20). But the ALJ cited no other medical evidence which was contrary to Dr. Vaught's opinion. Absent such evidence, the ALJ was simply substituting his own opinion for that of Dr. Vaught, which he may not do. *See, e. g.*, *Kemp v. Bowen*, 816 F. 2d 1469, 1476 (10th Cir. 1987) ("While the ALJ is authorized to make a final decision concerning disability, he can not interpose his own 'medical expertise' over that of a physician[.]") [citations omitted]. *See also McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("[A]n ALJ may not make speculative inferences from medical reports and may reject a . . . physician's opinion outright only on the basis of contradictory

medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.") [quotation omitted].

Further, with regard to the claimant's credibility, the ALJ mentioned her testimony that "[h]er respiratory difficulties exhaust her and she uses a nebulizer 3-4 times daily." (Tr. 18). But the ALJ failed to discuss the effect the claimant's use of a nebulizer might have on her ability to complete a normal work day. *See*, *e. g.*, *Klitz v. Barnhart*, 180 Fed. Appx. 808, 810 (10th Cir. 2006) ("Although the ALJ acknowledged Ms. Klitz's use of the nebulizer, he never addressed any effect it might have on her ability to work. . . . . The fifteen to twenty-five minute process of using the nebulizer one or two times a day on two or three days a week may be disruptive of a normal work day and affect [a claimant's] ability to perform the jobs the VE identified and on which the ALJ based his decision.") [unpublished opinion], *citing Eback v. Chater*, 94 F.3d 410, 411-12 (8th Cir. 1996) (discussing how the particularities of a claimant's need to use a nebulizer could affect the ability to perform all the duties of a job). Such consideration by the ALJ was particularly important in light of the claimant's being prescribed a nebulizer for use between two and four times daily (Tr. 245) and her testimony that she used the nebulizer three or four times daily and that each application took from 30 to 45 minutes (Tr. 299-300).

Accordingly, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If on remand there is any adjustment to the claimant's RFC, the ALJ should then redetermine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 19th day of May, 2008.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**